GLADNEY, Judge.
Mrs. Blanche Revere Long, as testamentary executrix of the succession of Earl Kemp Long, instituted two suits against Frank Matthews and his wife, Ruth Thigpen Matthews, and their son, James Roy Matthews, to recover the sum of $160,000. The alleged indebtedness was evidenced by three instruments or notes in writing, dated June 18, June 12 and June 13, I960.[1] Suit No. 25,138 (10,514 in this court) sought recovery of $50,000 upon the instrument dated June 18, 1960. In suit No. 25,139 of the district docket (10,513 in this court) recovery of $110,000 was sought under the instruments dated June 12 and June 13, 1960. The petitions in each of the suits were filed August 11, 1961 and each was answered on August 19, 1961.
The defenses relied upon were set forth by answers and reconventional demands as hereinafter related. A supplemental and amended answer and reconventional demand was filed December 18, 1961 in suit No. 25,138, and after consolidation of the cases for trial, the defendants, for the purpose of particularizing facts supporting the defenses previously urged, filed on May 6, 1963, an additional supplemental an amended answer and reconventional demand pertinent to each suit.
*870 In suit No. 25,138 the original answer admitted that on June 18, 1960 Ruth Matthews and James Roy Matthews received from Earl K. Long $50,000 not as a loan but for the purpose of holding the same for the accommodation of Long and that the instrument dated June 18, 1960 was signed solely for the purpose of functioning as a receipt. The answer averred that since receiving said money all of it had been returned to Long and the repayment thereof was specially pleaded. In the supplemental and amended answer and reconventional demand filed in this case on December 18, 1961 the defendants averred that on July 27 and August 5, 1959 they advanced and loaned to Earl K. Long $30,000 and $20,000 respectively, which sums were unpaid and owing to them during the period of June 12 through June 18, 1960. Based on these averments compensation and setoff was plead as an affirmative defense.
In suit No. 25,139 the original answer as filed therein was essentially the same as that filed in the other case in that it was admitted by the defendants that all of the money sought to be recovered by plaintiff had been received by defendants but only as an accommodation to Earl K. Long, and that a receipt was given therefor. In No. 25,139, however, the supplemental answer and reconventional demand filed also on December 18, 1961, asserted all of the $110,-000 had been returned except the sum of $13,988.28 against which defendants claimed an offset for lumber sold and delivered to Mrs. Blanche Long between January 9 and April 4, 1959, which claim was plead in compensation and reduced the balance remaining due from the defendants to the sum of $4,454.44. This amount was tendered to plaintiff, was refused, and then deposited in the registry of the court.
Appellee in opposing the special defenses of compensation and payment, sought to invoke the application of LSA-R.S. 13:3721 for the purpose of excluding parol evidence if offered for the purpose of proving that the succession of Earl K. Long was indebted or liable to defendants under their plea of compensation in suit No. 25,138 and the pleas of compensation and payment urged in suit No. 25,139. The plaintiff also denies that the alleged remittances were in fact made to Earl K. Long. Objection was also mad'e that if the money which admittedly was received by the defendants constituted a deposit, the plea of compensation is unavailable, and that further, such plea may not be resorted to except when the two debts are equally due and demandable.
The supplemental answer and reconven-tional demand filed May 6, 1963 was designed to particularize the defense of payment or return of the money as previously set forth in pleadings. Therein, with respect to suit No. 25,139 it was alleged that between July 19 and August 26, 1960, $96,011.72, in ten separate repayments of money, were made to Earl K. Long.
Upon the issues presented, the consolidated cases were tried with the result that in suit No. 25,138 judgment in favor of plaintiff was rendered against Frank Matthews as prayed for and the demands against Mrs. Ruth Thigpen Matthews and James Roy Matthews were dismissed. In suit No. 25,139 judgment in favor of plaintiff and against Frank Matthews and Mrs. Ruth Thigpen Matthews was rendered for the principal sum of $34,988.28. Appeals have been perfected by Frank Matthews in case No. 10,514 and by Frank Matthews and Mrs. Ruth Matthews in case No. 10,513. After the case was docketed in this court the plaintiff-appellee in No. 10,513 answered the appeal asking that the judgment be increased to the sum of $110,000.
During the trial and after plaintiff had rested her case appellants offered evidence to establish repayment, whereupon plaintiff objected to such evidence on the ground that the defenses were not supported by specific allegations or particularizations as to when, where, and how made, and defendants then offered to amend and particularize the facts supporting the defenses. The court, over the objection of counsel for plaintiff, and acting under the provisions of *871 LSA-C.C.P. Art. 1154 allowed the amendment to be filed on May 6, 1963, the effect of which was to particularize the general plea of repayment.
The first demand made for the recognition of the $50,000 debt allegedly due defendants was made in the reconventional demand filed December 18, 1961. As this was more than one year from the date of the death of the deceased, the applicability of LSA-R.S. 13:3721, et seq.[2] is urged as a bar to the admissibility of parol evidence to establish a debt or liability of the deceased for loans or advances of $30,000 and $20,-000 set forth in defendants’ plea of compensation.
Defendants’ answers in each suit filed on August 19, 1960 contained only a general plea of repayment of the money admittedly received by the defendants without further specification.
(3721)
“Parol evidence shall not be received to prove any debt or liability of a deceased person against his succession representative, heirs, or legatees when no suit to enforce it has been brought against the deceased prior to his death, unless within one year of the death of the deceased:
(1) A suit to enforce the debt or liability is brought against the succession representative, heirs, or legatees of the deceased;
*****
“The provisions of this section cannot be waived impliedly through the failure of a litigant to object to the admission of evidence which is inadmissible thereunder. As amended Acts 1960, No. 32, § 1.”
(3722)
“When parol evidence is admissible under the proyisions of R.S. 13:3721 the debt or liability of the deceased must be proved by the testimony of at least one creditable witness other than the claimant, and other corroborating circumstances. As amended Acts 1960, No. 32, § 1.”
After defendants’ pleadings, which were denominated in each instance a “Supplemental and Amended Answer and Recon-ventional Demand”, were filed more than one year after the death of Earl K. Long on September 5, 1960, it became important to determine if the effect of such pleadings relate back to the date of the filing of the answers on August 19,1961. The resolution of this issue rests upon the construction given LSA-C.C.P. Arts. 1154 and 1155.[3] Also we observe that the reconventional demand, though an incidental demand, must conform to the requirements of LSA-C.C.P. 891 prescribing the form of a petition on a principal demand.
The two sums allegedly advanced to Governor Long on July 27 and August 5, 1959 can under no circumstances be considered as a payment or repayment as prescribed by Civil Code Articles applicable *872 to the defense of payment. These codal articles 2131, et seq., are peculiarly applicable to a transaction between an obligor or debtor and an obligee or creditor and every payment presupposes a debt. LSA-C.C. Arts. 2131, 2132 and 2133. When Governor Long allegedly became indebted to Matthews in 1959 the advances allegedly were made by Matthews at a time when Long was not in debt to Matthews.
 For appellants to collect or receive credit for the $50,000 advanced it was necessary that appellants establish the debt or liability of the estate of Earl K. Long before said amount could support the plea of compensation. Compensation occurs when two people are at one time both the creditor and debtor of one another. For this situation to exist there must be at least two obligations, to-wit: each person must be indebted to the other. Therefore, in a defense of compensation the defendant must prove the indebtedness of the plaintiff, notwithstanding that compensation occurs by operation of law when mutual indebtedness exists. To attempt to prove this indebtedness by means of parol evidence when the deceased-debtor has been dead for more than a year, places the defendant-obligee within the purview of LSA-R.S. 13 :3721 for he must establish a “debt or liability” as the foundation for his defense of compensation.
The plea of compensation as urged in defendants’ reconventional demand, first filed on December 18, 1961, presented a new and separate demand not related to or connected with the general plea of repayment as stated in the original answer filed August 19, 1961, and therefore, the pleading of December 18, 1961 does not relate back to the filing of the original answer. With this conclusion we hold that parol evidence was inadmissible and the plea of compensation is denied.
The appellee has set forth other objections to the allowance of the plea of compensation. The first of these is that compensation does not take place when either of the debts is a demand of restitution of a deposit or loan for use. LSA-C.C. Art. 2210(2). This objection seems to have merit because the relevant facts indicate that Earl K. Long in delivering $160,000 to the defendants in reality made a deposit from which he withdrew at his will. The trial judge also held, and we think correctly, the plea is unavailing to defendants in suit No. 25,138 for at the time the compensation would have taken place defendants’ obligations had not matured and thus the two debts were not equally due or demandable, as required by Civil Code Art. 2209.[4]
Defendants’ plea of compensation having failed, the judgment as rendered by the trial court in favor of plaintiff and against the defendant, Frank Matthews, in suit No. 25,138 for $50,000 with six per cent interest per annum thereon from December 18, 1961 until paid will be affirmed at appellants’ cost.
Some insight into the traits of character and the concerns of Earl K. Long, as evidenced in the record, may be conducive to a better understanding of the unusual dealings of the individuals involved. Governor Long’s term of office ended during May, 1960, and shortly thereafter he entered upon a campaign in the Democratic Primaries for the election of congressman from the Eighth Congressional District. Two days prior to August 27, 1960, election day for the Second Primary, he suffered a severe heart attack from which he died on September 5, 1960. In June of 1959 he initiated a suit to dissolve his marriage of long standing and an injunction issued from this judicial proceeding which prohibited him from disposing of community funds. During this period the Federal Revenue Service was *873 actively engaged in an investigation of his affairs. Adding to these worries were stresses and strains from ill health, and a disturbing shortage of campaign contributions for his election to an office which he was determined to win whatever the cost. Frank Matthews was a trusted friend of long standing and one who had helped him in his political ventures. The $160,000 placed with Matthews was delivered in cash from the several places it had been deposited. Of some significance, it seems to us, is the manner in which Earl Long felt free to draw upon the money in the hands of Matthews. Whether or not it was a loan as claimed by appellee, or a deposit for accommodation as appellants assert, it appears clear that much of it was needed as campaign expenses, and Earl Long drew heavily upon it shortly after it was delivered to Matthews.
Turning our attention to the defenses urged in suit No. 25,139, we note that these are predicated first upon a plea of payment in which it is asserted that the sum of $96,-011.70 was repaid on ten separate occasions between July 19 and August 26, 1960 and second, a plea of compensation for the sum of $9,533.84 is claimed as an offset for lumber sold Mrs. Blanche Long between January 9 and April 4, 1959.
In specification of the remittances in support of the plea of payment, the defendants aver:
(1) That on or about July 9, 1960, the sum of $5,000 in cash was delivered by Willis Findley and Ellis Spears to Earl Kemp Long at Pleasant Hill, Louisiana, for and on behalf of Frank Matthews.
(2) That on or about July 21, 1960, the sum of $2,011.72 was paid to Earl K. Long by Frank Matthews by Western Union Money order sent to the said Earl Kemp Long, c/o Rapides Bank and Trust Company, Alexandria, Louisiana, and deposited to “Earl K. Long Political Campaign Account.”
(3) That on or about July 21, 1960, the turn of $40,000 in cash was repaid to the said Earl K. Long by Frank Matthews in person to Earl K. Long in cash at Winn-field, Louisiana.
(4) That on or about August 1, 1960, the sum of $5,000 in cash was paid by Frank Matthews to Earl K. Long, which said money was delivered by Willis Findley for and on behalf of Frank Matthews to Jay Chevalier for and on the account of Earl K. Long and for which a receipt was given by the said Jay Chevalier, this payment being made at Mansfield, Louisiana.
(5) That on about August 11, 1960, the sum of $6,000 in cash was paid by Frank Matthews to Earl K. Long, the said payment being made at Chestnut, Louisiana, by Ellis Spears and James Roy Matthews, for and on behalf of Frank Matthews and delivered to Earl Kemp Long in person.
(6) That on or about August 13, 1960, the sum of $1,000 was repaid to Earl Kemp Long by Frank Matthews by sending a Western Union money order to Earl Kemp Long in said amount at Baton Rouge, Louisiana.
(7) That on or about August 19, 1960, the sum of $9,000 in cash was repaid by Frank Matthews to Earl Kemp Long, said sum of cash money being delivered by Willis Findley and James Roy Matthews to Earl Kemp Long at Robeline, Louisiana, delivery of said money being made directly to said Long in person.
(8) That on or about August 20, 1960, the sum of $6,000 in cash was repaid to Earl K. Long by Frank Matthews by delivery of said sum of cash to said Earl K. Long in person by Joe T. Cawthom for and on behalf of Frank Matthews, delivery by said Cawthron to said Long having been made at or near Marksville, Louisiana.
(9) That on or about August 26,1960, the sum of $12,000 in cash was repaid by Frank Matthews to Earl Kemp Long, said sum of money being delivered by James Roy Matthews and Ellis Spears and on behalf of Frank Matthews to Earl Kemp Long in person at Goldonna, Louisiana.
*874 - (10) That on or about August 25, 1960, the sum of $10,000 was repaid by Frank Matthews to Earl Kemp Long, said sum of money being delivered in cash personally by Frank Matthews to Earl Kemp Long at Campti, Louisiana.
In suit No. 25,138 we held that the filing of the special plea of compensation on December 18, 1961, more than one year after the death of the decedent, had no retroactive effect and therefore was subject to the provisions of LSA-R.S. 13 :3721. This ruling was predicated upon the want of con-nexity between the special plea of compensation and the general plea of payment as set forth in the original answer. As a consequence of this ruling the admission of parol evidence for the purpose of establishing the plea of compensation was barred and forasmuch as proof by other evidence was not available, the plea of compensation failed. In suit No. 25,139, now under consideration, the defense thereto is predicated on a plea of payment which though pleaded in general terms in the original answer was first set forth with specification in a pleading filed on May 6,1963. In our opinion the pleading filed May 6,1963 for the purpose of particularizing the payments allegedly made is germane and connected with the general plea of payment as made in the original answer. Our holding, therefore, is that defendants’ plea of payment as supplemented and particularized by the pleading filed on May 6, 1963 must be considered as having been properly allowed.
Counsel for appellants argue with merit that parol evidénce may be resorted to when pleaded in defense for the purpose of showing payment as LSA-R.S. 13:3721, et seq., is inapposite. For in such a case parol evidence is not offered for the purpose of proving a debt or liability of the deceased, but only for the purpose of evidencing the discharge of an obligation. Young’s Heirs v. Veillon, La.App., 192 So. 545 (1st Cir. 1939) sustains the legal principle relied upon and we hold that LSA-R.S. 13:3721 ■has no application to the plea of payment tendered as a defense herein.
The written opinion of the trial judge reveals that he made a painstaking and thorough examination of the evidence adduced in support of defendants’ plea of payment which consisted largely of oral testimony. This necessitated the examination of hundreds of pages of a multi-volume record. His forty-six page opinion accurately sets forth the material facts and his findings and rulings. With respect to items numbered (1) through (10) as set forth in defendants’ plea of payment as quoted above, the judge allowed items numbered (1) through (8) as sufficiently proven, and disallowed items numbered (9) and (10) except the sum of $1,000 as evidenced by a check.
We have carefully examined the entire record and weighed the evidence we considered material and proceed to record concisely our findings. Noteworthy is the fact that defendants’ evidence with respect to items (1) through (8) as presented by the defendants was virtually uncontradicted. We do not find this to be true, however, with respect to items numbered (9) and (10). We have endeavored to record the strongest evidence presented, but with brevity. In reviewing the evidence in respect to each of the 10 items of payment, we have changed the order thereof only to the extent of transposing items 9 and 10:
(1) $5,000 is represented as having been personally delivered to Earl Long at Pleasant Hill on July 9,1960. The testimony of Willis Findley, bookkeeper for Matthews, was that he withdrew $3,000 from the office safe and cashed check No. 15,345 [offered in evidence] for $2,000 drawn to cash. The $5,000 in cash obtained thereby was delivered by Findley and Ellis Spears at Pleasant Hill on July 9. Findley’s testimony is consistent with that of Ellis Spears and corroborating circumstances are disclosed by the testimony of Waddy Assef, J. D. Har-kins and Robert Gentry.
(2) $2,000 was sent by Frank Matthews on July 21, 1960 by Western Union wire to the Rapides Bank and Trust Company for *875 Earl Long. Willis W. Findley testified to the delivery of check No. 15,528 [offered in evidence] for $2,011.72 drawn to the order of Western Union. The sum of $11.72 represented Western Union charges.
(3) $40,000 personally delivered by Frank Matthews to Earl Long at his farm in Winn-field on July 21, 1960. The testimony of Frank Matthews is in part substantiated by that of Willis W. Findley, who testified he made up a package of $40,000 in cash secured from a $2,000 check, No. 15,531 [offered in evidence] which was cashed and $38,000 in cash withdrawn from the office safe. The cash from the safe previously had been withdrawn from a lock box in the First National Bank in Mansfield. The testimony of Findley and Matthews was substantiated in some respects by the testimony of J. D. Harkins.
(4) $5,000 delivered to Jay Chevalier for Earl Long on August 1, 1960 at Matthews’ office in Mansfield. Chevalier signed a receipt for $5,000 in cash which was typed by Willis Findley and signed by Chevalier. This payment was further supported by check No. 15,684 for $5,000 which check was offered in evidence.
(5) $6,000 in cash personally delivered to Earl Long on August 11, 1960 at Chestnut by Ellis Spears and James Roy Matthews. The delivery of this money was further corroborated by the testimony of Frank Matthews, Willis W. Findley, J. D. Harkins and Robert Gentry.
(6) $1,000 represented by Western Union wire to Western Union at Baton Rouge. A copy of the wire and check No. 15,897 drawn payable to Ruth Matthews and by her endorsed to Western Union were filed in evidence.
(7) $9,000 in cash delivered to Earl Long at Robeline on August 19, 1960. Evidence of this payment is supported by the testimony of James Roy Matthews and Willis Findley who testified they personally made delivery of the cash to Earl Long. Corroborating circumstances are found in the testimony of Willis W. Findley who made up the package of money from cash withdrawn from the office safe. Other corroborating circumstances were related in testimony by Robert Gentry.
(8) $6,000 in cash personally delivered by Joe Cawthorn to Earl Long near Goodeaux. Cawthorn testified Matthews met Cawthorn on the road and gave him the money which the latter in turn delivered to Earl Long. Willis W. Findley said that the $6,000 in cash was made up by check No. 15,978 [offered in evidence] for $5,000 and $1,000 cash withdrawn from the office safe. Cawthorn stated that Earl Long told him that there was no need to count it as it belonged to him and he needed it to buy support in Avoylles Parish.
(9) $10,000 in cash personally delivered by Frank Matthews to Earl Long at Campti on August 25, 1960. Matthews testified the amount was delivered to Long at Campti in the presence of “Red” Harkins, and Jay Chevalier. The testimony of Frank Matthews is unsupported by any substantial testimony. Willis W. Findley testified the books did not show any entry on August 25, 1960, although they did show a cash withdrawal on August 28, 1960 of $10,000 charged against Long’s account. Findley testified this sum was given by him to Matthews. Matthews testified that the amount was taken from his safe without cashing a check. In rebuttal W. K. Brown and Ellis Littleton testified Earl Long spoke on Thursday, August 25, 1960 in Bunkie, Evergreen, LeCompte and Glenmora where Long became ill between 8 and 8:30 P.M. and was driven by Ellis Littleton to the Bentley Hotel. The trial judge was convinced that Earl K. Long was not in Campti on August 25, 1960, but was campaigning in another portion of the district and that delivery of the money was not proven to a legal certainty.
(10) $12,000 in cash delivered by James Roy Matthews and Ellis Spears to Earl K. Long personally at Goldonna on August 26, 1960. Frank Matthews testified this amount *876 of cash was taken from a safe and represented part of a loan to Matthews from T. R. Gafford. . Findley testified to a cash withdrawal o.f $11,000 from the office safe and $1,000 from check No. 16,033 [offered in evidence]. The money was turned over to Matthews by Findley. James Roy Matthews and Ellis Spears testified they took the money to Goldonna and personally handed the package to Earl Long. Neither witness was sure of the date and fixed it as the latter part of August. J. D. Har-kins testified he was not sure of the date but he saw James Roy Matthews and Ellis Spears in Goldonna after Long had told him he was looking for someone from Frank Matthews. In rebutting this testimony Dr. Robert U. Parrott testified that he first saw Long in the Bentley Hotel about 6:30 on August 26 and learned he had been in the hotel room since at least noon of that day. At the time he was in serious condition from a state of shock and almost without blood pressure or pulse beat. Joe J. Spera, bell captain at the hotel testified he was in and out of Governor Long’s suite on Friday, August 26th; that Long was sick and so far as he knew did not leave his room that day. It was conclusively established Earl Long did not speak at Goldonna on that date. The trial court disallowed this claim as being unproven except in the amount of $1,000, a check dated August 26, 1960, and deposited in the Rapides Bank and Trust Company to Earl K. Long’s political fund.
Defendants have also tendered, through a plea of compensation, evidence of a $9,-533.84 offset against appellee’s claim for lumber allegedly supplied to Mrs. Blanche Long to be used in the building of a house at Baton Rouge. Appellants sought to establish this claim primarily through the oral testimony of Frank Matthews although some invoices were filed in evidence. As parol evidence was necessary to establish proof of a debt or a liability first demanded more than a year after the death of the deceased debtor, such proof is barred by LSA-R.S. 13 :3721. The debt was assertedly incurred in January, 1959. Accordingly, defendants’ plea of compensation must fail.
In weighing the evidence we are met with some inconsistencies and uncertainties in the testimony but this should be expected considering the number of transactions and people involved. Our finding is that these irregularities are not sufficient to overbalance the proof submitted by the defendants with respect to items numbered (1) through (8). We find all of these payments were substantiated by a preponderance of the evidence. Manifestly, the decision of the trial judge and of this court must rest heavily upon the credibility of the witnesses who testified as to these sundry transactions. It is our duty to accord high respect for the findings by the trier of facts forasmuch as he is accorded the better opportunity to determine the truthfulness of the witnesses who appeared in his presence. After our examination of the evidence, we were seriously concerned with the question of whether or not payments made by Matthews and deposited to the political fund of Earl K. Long constituted gifts by Matthews or payments to be credited against the amount due by Matthews. In view of a serious need for political funds as hereinabove noted, and in the absence of other evidence, we regard these remittances as payments for the reason that we believe Earl Long directed the manner in which they were forwarded and were not voluntary donations by Matthews. For these reasons we hold that the trial judge was correct in his findings with respect to items numbered (1) through (8). We also approve of his findings which disallowed as payments the amounts claimed in items numbered (9) and (10) with the exception of $1,000. The effect of our holdings is to affirm without exceptions, the judgments as decided by the trial court.
It follows, therefore, that the judgment rendered by the trial court in case No. 25,139 [10,513 on the docket of this court] should be, and is hereby affirmed at appellants’ cost.

. “6-18-60 We owe Earl Long $50,000.00 —Fifty Thousand dollars — Interest paid for six months, at the end of six months we promise to repay if not start paying interest at 6 (six) percent for which note will be extended for one year.
Ruth Matthews James Roy Matthews”
“6-12-60 We owe Earl Long $46,000.00, Interest paid for six months, at end of six months we promise to repay if not start paying interest at 6 percent for which note will be extended for one year.
Frank Matthews Ruth Matthews” “6/13/60 We, owe Earl K. Long ($64,-000.00) — Sixty Four Thousand Dollars.— Interest paid for Six Months, at end of Six Months We promise to repay, if not to start paying interest @ 6% (Six Percent) for which note will be extended for one year.
Ruth Matthews”

. The pertinent provisions of this Statute read:

. The third sentence of Art. 1154 is pertinent.
It reads:
“ * * * If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby, and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits. * * * ”
With respect to the quotation the official comment states:
“ * * * But the law is changed under the third sentence of the above article which authorizes the trial judge to permit amendments, even on the trial of the case, so as to plead the material facts supporting an affirmative defense pleaded only generally or as legal conclusions in the original answer.” Emphasis added.
Article 1155 states:
“The court, on motion of a party, upon reasonable notice and upon such terms as are just, may permit mover to file a supplemental petition or answer setting forth items of damage, causes of action or defenses which have become exigible since the date of filing the original petition or answer, and wMch are related to or connected with the causes of action or defenses asserted therein.” Emphasis added.

. C.C. Art. 2209 states:
“Compensation takes place only between two debts having equally for their object a sum of money, or a certain quantity of consumable things of one and the same kind, and which are equally liquidated and demandable.
The days of grace are no obstacle to the compensation.”